PULLMAN COMPANY v. WALTON.

Opinion delivered April 3, 1922.

1. CARRIERS—FAILURE TO FURNISH ACCOMMODATIONS—WAIVER.—
   Where passengers were refused admission to a sleeping car after
   they had purchased tickets entitling them to such accommoda-
   tions, the carrier was not absolved from liability by the fact that
   the passengers subsequently surrendered their tickets and ac-
   cepted a return of their money.

2. CARRIERS—FAILURE TO FURNISH ACCOMMODATIONS—LIABILITY.—
   Where a Pullman passenger, on being refused admission to a car
   which his ticket called for, gave his tickets to a station porter
   with instructions to return to the ticket office and ascertain
   whether another berth could be had, the porter was not the
   passenger's agent, and information given him by the ticket agent
   as to berth vacancies in the designated car, not being com-
   municated to the passenger, was not binding on the latter.

3. DAMAGES—DUTY TO MITIGATE.—Where a passenger who was des-
   perately ill was refused admission to the sleeping car which his
   ticket called for, he was not required to suspend his journey by
   stopping over for a later train in order to mitigate damages
   resulting from the carrier's breach of contract.

4. CARRIERS—DAMAGES NOT EXCESSIVE WHEN.—Where a sick pas-
   senger was refused a berth in a sleeping car, in violation of the
   carrier's contract, and his sufferings were much augmented by
   failure to secure a comfortable bed during a 15-hour journey,
   a verdict of $1,000 for the added suffering was not excessive.

5. CARRIERS—REFUSAL TO FURNISH BERTH—EXCESSIVE DAMAGES.—A
   verdict of $250 in favor of a brother and a similar verdict in
   favor of a wife accompanying a sick man for refusal of a carrier
   to furnish berths conformably to their tickets for a 15-hour
   journey, held excessive, and should be reduced to $25.

Appeal from Johnson Circuit Court; *A. B. Priddy,*
Judge; modified.

*Reid, Gray, Burrow & McDonnell,* for appellant.

Appellees surrendered their tickets and received
back their money. There was no objection, and no right
of recovery under the circumstances.

If any cause of action in favor of appellees existed,
it was based upon the negligence of the ticket agent, and
not upon that the conductor. 65 S. W. 437; 65 Ark. 177.
Misinformation given by one agent of a railroad where

corrected by another agent before a party starts upon his journey cannot be made the basis of a cause of action. R. C. L. sec. 578, p. 1134; see also secs. 756 and 757. The regulation of the company under which the conductor denied appellees the right to berths upon their erroneous tickets is reasonable and for the benefit of both the passenger and the company. 106 Ark. 544; 94 Ark. 153; 98 Ark. 418; 106 Ark. 269.

Appellees were guilty of contributory negligence in proceeding on their journey without proper accommodations which they might have secured on another train. 102 Ark. 246; 105 U. S. 224; 101 Ark. 94. The refusal to admit appellees to the sleeping car was not the proximate cause of the injury. 76 N. E. 237.

The verdicts were excessive. Only nominal damages should have been allowed. 99 Ark. 420; 138 Mo. App. 238; 119 S. W. 1072.

Plaintiff's instruction No. 1 was erroneous because it allowed recovery for "wounded feelings," which cause of action did not survive the death of Jesse Walton. 41 Ark. 295. Nor was this a basis for damages to the surviving appellees. 65 Ark. 177; 88 Ark. 282; 100 Ark. 356.

*Heartsill Ragon* and *Jesse Reynolds*, for appellees.

The surrender of the tickets did not deprive appellees of their cause of action.

The sale of the tickets by the agent to the appellee constituted a contract, which was breached by the refusal of the conductor to furnish the sleeping accommodations, and entitled appellees to recover damages. 10 C. J. sec. 1530, p. 1169; 5 R. C. L. 754, p. 125; 28 S. W. 721; 32 Misc. (N. Y.) 243.

The verdicts were not excessive. 120 Ark. 54; 28 S. W. 719; 54 S. W. 624.

Appellees were entitled to recover for "anxiety" and "humiliation", as set forth in instruction 9 about which appellant complains. 65 Ark. 177; 88 Ark. 282; 47 Ark. 505; 98 Ark. 418. Appellant should have specifically objected to these elements of damage being in

corporated in the instruction, instead of contenting himself with a general objection. 116 Ark. 179; 98 Ark. 555; 87 Ark. 396; 118 Ark. 72.

McCULLOCH, C. J. This appeal involves three actions, instituted separately against appellant by appellees and later consolidated, to recover damages alleged to have resulted from failure to furnish sleeping car berths on a car operated from Kansas City, Missouri, to Clarksville, Arkansas. One of the actions was instituted by appellee Lee Walton in his own individual right; another was instituted by Lee Walton as administrator of the estate of Jesse Walton, deceased; and the third action was instituted by Nora Walton. Nora Walton was the wife of Jesse Walton, now deceased, and Lee Walton was a brother of the deceased. All of them lived near Clarksville, Arkansas, and Jesse Walton fell into ill health and had to go to a point in Colorado. He was afflicted with tuberculosis and gradually grew worse. So in April, 1920, when it was determined that he could not recover his health, deceased called upon his brother, Lee Walton, to come to Colorado and take him back to his home at Clarksville.

In compliance with his brother's request, Lee Walton went to Colorado, and the party started back on the journey to Clarksville. Deceased was unable to travel alone and had to be carried about on a cot between trains, and while traveling on the car had to be carried back and forth to the toilet. He was then in a very low state of health, and died in about a month after returning home.

He was carried in a baggage car as far as Pueblo, Colorado, and there sleeping car accommodations were obtained form Pueblo to Kansas City, and a reservation was secured by wire from Kansas City to Clarksville over the Missouri Pacific Railroad.

The party reached Kansas City about 8 o'clock in the evening, and Lee Walton went to the Pullman ticket window in the station to purchase tickets for the berths designated in the reservation which had been previously obtained. The reservation called for lower berths 7 and

8 in car 9, but when Walton made application for the tickets he was told by the agent that car 9 would not go out on the train that night, but that car 8 would go out, and the agent sold Walton lower berths numbers 4 and 5 in car 8, Walton consenting to that change in the designation of the berths.

The train was to leave at 10 o'clock that night, and the Walton party applied at the entrance of the Pullman car for admittance, but the conductor refused to admit them on the ground that the berths for which their tickets called had already been sold and occupied.

There is conflict in the testimony about the way the tickets read, but it is undisputed that there was a discrepancy in the designation of the berths, and that the conductor refused to admit the party into the car for the purpose of occupying the berths designated.

There is also a conflict in certain other features of the testimony as to what occurred after the Walton party appeared at the Pullman car. Lee Walton testified that when the conductor refused to admit him he stated that all of the berths in the car had been taken. He states that he then asked the conductor to furnish them at least one berth for his sick brother, but the conductor told him that every berth in the car had been taken, and that no accommodations could be furnished. He states that it was nearly time for the train to start, and he gave the tickets to a station porter with instructions to return the tickets to the ticket office in the station and to ascertain whether or not another berth could be obtained; that just before the train left the porter returned and handed him back his money for the tickets. He testified that it was so near the time for the train to leave that he was afraid to return to the ticket office himself, and that the Pullman conductor notified him that the train was about to leave.

The conductor testified that he refused to admit Walton to the car for the reason that his ticket called for berths in car number 9 when there was no such car to go out on the train. He testified that when this occurred it was thirty minutes before time for the departure of the

train, and that he told Walton to go back to the ticket office and get his berth tickets changed; that he saw no more of Walton and that no further request was made of him.

As the result of failure to get into the sleeping car, the Walton party went into the day coach—a chair car— and rode there from Kansas City to Clarksville. The schedule time for the trip was fifteen hours, but the train was three hours late when it arrived at Clarksville. The whole of the night was taken up in the ride from Kansas City to Coffeyville, the remainder of the trip being in the day time.

The testimony shows that Jesse Walton was very feeble at the time and was absolutely helpless. His brother made a resting place for him out of two seats with suit cases and boxes in between, but he was very uncomfortable all night and got little, if any, rest. The next day his temperature was considerably higher, and the evidence is that he suffered great inconvenience, discomfort and pain in failing to get a berth to sleep in. He had to be carried to the toilet several times during the night, and also suffered from being near the door, which was opened and slammed at stations when passengers were going in and out.

The jury awarded damages to the estate of Jesse Walton in the sum of $1,000, and awarded damages to each of the other appellees in their individual capacities in the sum of $250.

The conflicts in the testimony have been settled by the verdict of the jury, and the evidence was sufficient to warrant a finding in favor of appellees for the recovery of damages.

There is no question involved of the right of the sleeping car company to require the purchase and exhibition of tickets and to promulgate and enforce rules with respect to the operation of its cars. This does not, however, absolve the company from liability for negligence of its servants in refusing to furnish accommodations in accordance with tickets purchased by patrons,

and the company was not absolved from liability in this instance by the fact that the holders of the tickets surrendered them and accepted the price of the tickets in return. This is true for the reason that appellee had then been deprived of the use of the tickets by the refusal of the conductor to admit them to the car. In other words, it was not a voluntary surrender of the tickets in the sense that there was a cancellation or rescission of the contract, the terms of which had already been broken by the company's servant in refusing to admit the passengers into the car. All the passengers could do then was to surrender the tickets and accept return of the money, and the acceptance of the money did not waive the wrong or negligence of the servants in failing to comply with the contract.

The ticket agent at Kansas City who sold the Pullman tickets to Lee Walton testified that when the station porter came back to the office with the tickets he informed the porter of the mistake and told him to report to Walton that upper berth numbers 4 and 5 were unoccupied and that he could obtain them from the conductor on the train when the diagram was sent down. It is insisted that Walton was bound by this information imparted to the porter, even though it was not communicated to him. The testimony of Walton is that no such information was communicated to him, but that, on the contrary, he asked the conductor of the Pullman car to give him at least one berth if the opportunity to obtain one arose. He was not bound by the statement of the ticket agent to the porter, for the porter was merely a messenger and not the agent of Walton except for the purpose of surrendering the tickets and receiving the money in return.

It is also insisted that the members of the Walton party were guilty of negligence in not remaining in Kansas City that night after they had failed to obtain sleeping car accommodations, instead of proceeding on their journey in the day coach. Learned counsel for appellant insist upon the rule often announced in decisions of this

court that it is the duty of a person to exercise reasonable exertion and care to mitigate damages resulting from negligence or breach of contract of another. *Western Union Telegraph Co.* v. *Ivy,* 102 Ark. 246. The principle, of course, is sound, but it has no application to the facts of this case. One of the travelers, Jesse Walton, was desperately ill, and the party were not compelled to temporarily suspend the journey because they could not obtain Pullman accommodations. The inconvenience of remaining in Kansas City was sufficient to justify them in failing to suspend the journey, notwithstanding their inability to secure sleeping car accommodations. It would be unreasonable to impose the duty on travelers, situated as these people were, of suspending their journey and remaining over-night at a point short of their destination.

Finally, it is insisted that the award of damages in the verdict is excessive. We cannot say that the verdict in favor of the estate of Jesse Walton, deceased, is excessive. There is, as we have often said, no exact rule whereby damages may be measured for personal pain and discomfort. If we were called upon to assess the damages, we perhaps would not allow as much as the jury has allowed in this instance, but we cannot say that the award is excessive. The man was very sick, and according to the evidence his suffering was very considerably augmented by his failure to secure a comfortable bed during the journey from Kansas City to his old home. This added suffering, inconvenience and discomfort covered a period of eighteen hours, and we cannot say that the award of $1,000 as compensation for the suffering and discomfort during that period is excessive.

The other two verdicts are, we think, clearly excessive. The situation of the two appellees was distressing. They were bringing home their husband and brother and were doubtless laboring under great physical and mental strain. They would have obtained but little rest, even if they had secured a berth in the Pullman car, and they are merely damaged to the extent of the

inconvenience of sitting up during the night instead of lying down on a bed during the intervals that they could have spared from attention to the wants of the invalid. Of course, they cannot be permitted to recover for the mental anxiety suffered on account of the situation and condition of the invalid. Their recovery must be confined to the injury imposed by depriving them of a place to rest. We think that, under the circumstances, they are entitled to recover little more than nominal damages. A recovery of $25 for each of them is all that should be sustained, and the judgment in their favor will be modified by reducing the recovery to that amount.

The judgment in favor of Lee Walton as administrator will be affirmed.

It is so ordered.